**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**CFP NEW ORLEANS, LLC**                                    **CIVIL ACTION**

**VERSUS**                                                             **NO: 16-15474**

**JUDICIAL DISTRICT COURT**                        **SECTION "H"**
**BUILDING COMMISSION**
**ORLEANS PARISH ET AL.**

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff CFP New Orleans, LLC ("CFP") filed this breach of contract action on October 13, 2016.[1] In its Complaint, Plaintiff sued the Orleans Parish Judicial District Court Building Commission ("JBC"),[2] a public corporation tasked with managing the construction of a new Civil District Courthouse in Orleans Parish; Judge Kern A. Reese, the JBC's chairman; and Judge Christopher Bruno, a member of the JBC.[3] The Complaint sought monetary damages from JBC for an alleged breach of a Professional Services Agreement

---

[1] This case initially was assigned to then-Chief Judge Kurt Engelhardt. On May 16, 2018, the case was reassigned to Judge Martin Feldman, and on May 21, 2018, it was reassigned to this Court.

[2] The members of JBC's governing body, its Board of Commissions, include all the judges of Orleans Parish's Civil District Court. Doc. 1. at 4.

[3] Doc. 1.

("Agreement") that JBC entered into with CFP, a development firm, as part of a proposal to build a new courthouse.[4] CFP included among its claims one for "breach of an implied contract" against Judge Reese and one for intentional interference with contractual relations against Judge Bruno.[5] On September 7, 2017, all claims against Defendants Reese and Bruno were dismissed.[6] State law claims for breach of contract and suit on an open account remained pending against JBC. On May 3, 2018, a Motion for Summary Judgment by Defendant JBC was partially granted that dismissed CFP's claim "for the $467,564.00 expended by Civic Development Collaborative . . . to obtain 'site control' of the Canal Street and Cleveland Avenue immovable properties at issue here."[7]

This Court held a one-day bench trial on CFP's remaining breach of contract claim against JBC on September 21, 2018.[8] Having considered the evidence admitted at trial and the arguments of counsel, this Court makes the following findings of fact and conclusions of law. To the extent a finding of fact constitutes a conclusion of law, and vice versa, the Court adopts it as such.

## FINDINGS OF FACT

1.      Jurisdiction is based on diversity.

2.      On December 19, 2014, JBC entered into a Professional Services Agreement ("Agreement") with CFP. The Agreement contains an Effective Date of February 18, 2014.[9]

---

[4]  Doc. 1.
[5]  *Id.*
[6]  Doc. 25.
[7]  Doc. 51.
[8]  Even after trial, it remains unclear exactly how much money CFP sought from JBC in this suit. In its Complaint, CFP sought $953,650.04 plus interest and attorneys' fees from JBC. Doc. 1. At most, CFP's claims remaining after Judge Engelhardt's dismissals amounted to $486,086.04 plus interest and attorneys' fees. *See* Exhibit J-17 at 1.
[9]  Exhibit J-19.

3. Under the Agreement, CFP agreed "to provide JBC a complete, turn-key array of Services required to plan, finance, construct, and equip the Facility for use by the current occupants of the Civil District Court Complex."[10]

4. "The Facility" referred to in the Agreement was a proposed new courthouse.

5. The Agreement provides that CFP would perform its obligations under the contract in three distinct "phases." The execution of the Agreement authorized CFP to perform the "Phase 1" services described in the Agreement. CFP needed JBC's authorization to proceed with Phase 2 and Phase 3 services.[11]

6. JBC never authorized CFP to proceed with Phase 2 or Phase 3 services.

7. Phase 1 services under the Agreement included obligations on CFP's part (a) to refine a project program outlining the development plans for the new courthouse; (b) to regularly meet with JBC during the planning phases of the project; (c) to develop financing plans for the project; and (d) to provide JBC with preliminary design proposals, construction cost estimates, and a preliminary project schedule.[12]

8. Phase 1 of the Agreement also obligated both parties to "negotiate and enter into a definitive binding agreement for the purchase of the Property, on terms and conditions satisfactory to JBC in its sole discretion."[13]

---

[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

9.  The Agreement defines the "Property" as the "Parent Tract," which is further defined as "Square 370 in the First Municipal District of the City of New Orleans, bounded by Cleveland Avenue, South Robertson Street, Canal Street, and Villere Street (excluding the historic building on the corner of Cleveland Avenue and South Robertson Street)."[14]

10. The parties failed to enter into a binding agreement for the purchase of the Property.

11. The Agreement included a $500,000 "Development Fee" for the performance of Phase 1 services. JBC was obligated to pay the first $250,000 "upon review and approval by JBC of documentation, work product and other materials reasonably satisfactory to JBC of Phase 1 Services performed since the Effective date of [the] Agreement." JBC was obligated to pay the second $250,000 "upon completion of Phase 1."[15]

12. The Agreement further provides that "JBC, subject to its approval, will be responsible for payment of the following third party fees and expenses: all principal and interest for the indebtedness incurred by the JBC and all costs of the financing, fees and costs of the Architect, Underwriter, Issuer, NMTC Advisor and Financial Advisor; construction costs; and legal fees and expenses of JBC counsel."[16]

13. JBC paid CFP the first $250,000 installment for Phase 1 services on January 5, 2015.[17]

---

[14] *Id.*
[15] Exhibit J-19.
[16] *Id.*
[17] Exhibit J-34.

14. JBC paid CFP an additional $343,451.33 on July 21, 2015.[18]

15. JBC thus paid CFP a total of $593,451.33.

16. The Agreement provides that JBC could terminate the Agreement without cause under a "Termination for Convenience" provision.[19] If JBC decided to terminate for convenience, it was "obligated to pay [CFP] only for those Services performed and to reimburse for all third party expenses incurred by [CFP] under [the] Agreement up to and through the date of termination."[20] Any fees for services were to be "equitably adjusted."[21]

17. CFP never received pre-approval for any third party expenses.[22]

18. JBC terminated the Agreement pursuant to a letter dated October 19, 2015, that was sent by Richard Richter on JBC's behalf to CFP. The letter did not specify reasons for termination of the Agreement.[23]

19. Louisiana law governs the Agreement.[24]

## CONCLUSIONS OF LAW

1. Because this Court bases jurisdiction on diversity,[25] Louisiana law applies.[26]

---

[18] Exhibit J-32.
[19] Exhibit J-19.
[20] *Id.*
[21] *Id.*
[22] *See* Testimony of Daniel Nelson.
[23] Exhibit J-29.
[24] Exhibit J-19.
[25] *See* 28 U.S.C. § 1332.
[26] *See* Salve Regina Coll. v. Russell, 499 U.S. 225, 226 (1991) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).

2. Under Louisiana law, "'[c]ontracts have the effect of law for the parties' and the 'interpretation of a contract is the determination of the common intent of the parties.'"[27]

3. "The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed."[28]

4. "'When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. '"[29]

5. The Agreement provides that JBC and CFP had to enter into a separate contract to purchase property for the new courthouse to complete Phase 1 of the Agreement. Because the parties reached no such agreement, Phase 1 was never completed. As such, JBC was not obligated to pay the second installment ($250,000) of the $500,000 Development Fee to CFP.

6. The Agreement was terminated for convenience under Art. X, Section 2 of the Agreement. Such a termination entitles CFP to fees from JBC for "Services performed" subject to an "equitable adjustment" and reimbursement for "all third party expenses."[30]

7. According to George Bendeck, an expert in architecture, CFP failed to provide JBC with a sufficient program—a construction planning document—as required by Phase 1 the Agreement. This Court finds Bendeck's testimony credible.

---

[27] Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC, 112 So. 3d 187, 192 (La. 2013) (citing LA. CIV. CODE arts. 1983, 2045).
[28] Id.
[29] Id. (quoting LA. CIV. CODE art. 2046).
[30] Exhibit J-19.

8.    The Agreement provides that "JBC shall pay . . . [CFP] . . . the sum of $500,000 of the Development Fee for the performance of Phase 1 Services."[31] JBC paid CFP the first $250,000 installment of that sum.[32] JBC does not owe CFP the remaining $250,000 because payment was contingent on the completion of Phase 1, which never occurred.[33]

9.    To the extent CFP claims it performed additional "services" under the Agreement warranting payment under the termination for convenience clause, this Court finds that CFP failed to carry its burden of proof to justify any such payment.[34]

10.   This Court finds that the "third party expenses" referenced in the termination for convenience clause are the same third party expenses outlined in Article III, Section 3.B. of the Agreement.

11.   Because Article III, Section 3.B of the Agreement provides that any third party expenses required pre-approval by JBC, the Agreement must have contemplated a budget or, at the very least, some type of negotiation regarding third party expenses *before* CFP presented JBC with thousands of dollars in receipts for dining, legal fees, and, among other expenses, first class airfare.

---

[31] *Id.*

[32] Exhibit J-34.

[33] *See* Exhibit J-19.

[34] This Court's most generous calculation of "services" billed by CFP amounts to $796,042.95. *See* Exhibit J-17 at 2, 10, and 64. That total includes $250,000 for "Development Services – Phase 1" plus $62,000 in underwriting services, *see* J-17 at 64; $250,000 for "Professional Architectural Services" plus $11,540 in "additional services," *see* J-17 at 10; and $222,502.95 for more "Professional Architectural Services," *see* J-17 at 2. These invoices, however, include numerous overlapping line items, and, in general, utterly fail to justify *additional* payment beyond the $593,451.33 JBC has already paid CFP for these exact tasks.

Because CFP never received pre-approval for such expenses, it cannot now claim it is entitled to them.

12. As such, JBC does not owe CFP any more money under the Agreement.

## <u>CONCLUSION</u>

For the following reasons, this Court renders judgment in favor of Defendant JBC. Plaintiff CFP's remaining claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 7th day of January, 2019.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**